UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEPHANIE S. LUJAN,

    Plaintiff,

    v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security

    Defendant.

No. 2:17-cv-197-EFB

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.[1]

I.    <u>Background</u>

Plaintiff filed an application for SSI, alleging that she had been disabled since October 1, 2011. Administrative Record ("AR") at 203-21. Plaintiff's application was denied initially and

---

[1] Plaintiff filed a request for the court to hold a hearing on the cross-motions for summary judgment. ECF No. 23. The court finds that oral argument would not be of material assistance to resolution of the pending motions, and therefore plaintiff's request for a hearing is denied.

upon reconsideration. *Id.* at 124-29, 133-39. On November 18, 2014, a hearing was held before Administrative Law Judge ("ALJ") Mary Gallagher Dilley. *Id*. at 50-92. Plaintiff appeared, was represented by counsel and plaintiff and a vocational expert ("VE") testified. *Id*. On June 19, 2015, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[2] *Id*. at 12-25. The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since September 25, 2012, the application date (20 CFR 416.971 *et seq.*).

\* \* \*

2. The claimant has the following severe impairments: chronic pain syndrome on narcotic therapy; depression; and anxiety disorder (20 CFR 416.920(c)).

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

\* \* \*

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.416.920(d), 416.925 and 416.926).

\* \* \*

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), i.e., lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk for six out of eight hours, and sit for six out of eight hours, except the claimant should avoid concentrated exposure to hazards and not climb ladders, ropes, or scaffolds. She is able to perform work that is simple and routine with no public contact.

\* \* \*

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

\* \* \*

6. The claimant was born [in] 1981 and was 30 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocation Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

\* \* \*

10. The claimant has not been under a disability, as defined by the Social Security Act, since September 25, 2012, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 14-25.

Plaintiff's request for Appeals Council review was denied on December 1, 2016, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

3

II.     Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.    Analysis

Plaintiff argues that the ALJ erred (1) by failing to find that Lyme disease was a severe impairment, (2) weighing the medical opinion evidence, (3) by finding plaintiff's statements regarding the severity of her symptoms not credible, (4) and rejecting lay testimony absent sufficient reasons. ECF No. 20-1 at 39-61. As explained below, the court finds that the ALJ erred in finding that plaintiff's Lyme disease was not a severe impairment. The error was not harmless, requiring the matter be remanded for further proceedings.[3]

/////

/////

---

[3] As the matter must be remanded on this basis, the court declines to address plaintiff's additional arguments.

4

A.     Relevant Legal Standards

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were not taken into account. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At step-two the claimant has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show that his or her impairments are severe and are expected to last for a continuous period of twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir.2005); *see also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p).

When the ALJ determines that a claimant has at least one severe impairment, he must consider all impairments, including non-severe impairments, at all subsequent steps of the sequential evaluation. *Smolen*, 80 F.3d at 1290; *see also Burch v. Barnhart*, 400 F.3d 676, 682-82 (9th Cir. 2005) (ALJ's failure to find claimant's obesity severe at step two was harmless error where it was considered in determining claimant's RFC).

B.     Background

From January to November 2012, plaintiff received treatment from Dr. Raphael Stricker, a hematologist in San Francisco, California. AR 55, 607. Plaintiff reported that she was bit by a tick at age 9, which resulted in a rash, mood swings, and fatigue. *Id*. at 606. Her symptoms initially improved with medication, but she subsequently experienced burning muscle pain, headaches, stiff neck, blurred vision, tinnitus, cognitive issues, nausea, and shortness of breath. *Id*. She reported that in 2008, she experienced swelling in her knee, joint pain, and muscle aches. *Id*. Dr. Stricker's examined plaintiff in January 2012, which showed pain in plaintiff's knees, wrists, ankles, and shoulder on range of motion. *Id*. at 607. Dr. Stricker order significant lab

work and serologic testing, which included Western blot tests.[4] AR 465-88, 499-513. Plaintiff tested positive on the IgM Western blot test, but negative on the IgG Western blot test. *Id*. at 465-66. Serologic testing also reflected that plaintiff was positive for Babesia.[5] *Id*. at 468. Based on his examination of plaintiff and the results of blood tests, Dr. Stricker diagnosed plaintiff with chronic Lyme disease; Babesia positive; chronic fatigue syndrome; and fibromyalgia. *Id*. at 606-609. Dr. Stricker prescribed long-term antibiotic treatment with Amoxicillin for plaintiff's Lyme disease.[6]

Plaintiff subsequently was seen by Dr. John Bakos. Dr. Bakos treated plaintiff for chronic pain, including back, neck, joint, and "overall body" pain. *Id*. at 536-52, 561-66. In addition to chronic pain syndrome, Dr. Bakos diagnosed plaintiff with migraines, insomnia, bipolar disorder, panic disorder, and Lyme disease. *Id*. at 532, 550, 552.

After the administrative hearing, the ALJ served interrogatories on Dr. Don Clark, a non-examining physician who reviewed plaintiff's medical records. AR 623-634. Dr. Clark noted that plaintiff had been diagnosed with chronic Lyme disease, among other things, but stated that he personally could not make the same diagnosis. *Id*. at 627. He provided the following explanation as to why he was unable to diagnose Lyme disease:

> [Plaintiff] did report a history of tick bite, and one doctor reports a history ECM, a migratory skin rash associated with Lyme disease. None of the physical examinations report synovitis of the joints which is characteristic of chronic Lyme disease. A recent study shows that chronic fatigue occurs in only about 3% of chronic Lyme disease patients. Antibiotic treatment does not seem to have changed symptoms. I am unable to make the diagnosis of Lyme disease. The electrocardiogram (2F) is normal and I don't find any cardiac complications of Lyme disease. Caveat on all Lyme lab work says diagnosis should not be made on lab results alone.

*Id*.

---

[4] The Western blot test is a lab test that identifies antibodies to the bacteria to help confirm a diagnosis of Lyme disease. *See* Mayo Clinic, Lyme Disease Diagnosis & Treatment, https://www.mayoclinic. org/diseases-conditions/lyme-disease/diagnosis-treatment/drc-20374655

[5] Babesia are parasites typically spread through tick bites. Center for Disease Control, Parasites-Babesiois, CDC, https://www.cdc.gov/parasites/babesiosis/epi.html.

[6] Dr. Stricker also prescribed Biaxin, but plaintiff's insurance denied coverage. AR 609.

At step-two the ALJ determined that plaintiff's severe impairments included chronic pain syndrome on narcotic therapy; depression; and anxiety. AR 14. She noted that plaintiff's treatment records show a "history of Lyme disease," but concluded that the impairment, as well as other impairments, "caused only transient and mild symptoms and limitations," were well controlled, persisted for less than a year, or were otherwise not adequately supported by medical evidence. *Id*. Specific to plaintiff's history of Lyme disease, the ALJ stated that "later records do not confirm [Lyme disease,] so [it is] not currently medically determinable from the record." *Id*.

The ALJ further addressed evidence of Lyme disease in her step-four finding in relation to weighing the medical opinion evidence. She determined that the treating opinions of Dr. Bakos and Dr. Stricker deserve less weight than Dr. Clark's opinion because their opinions are inconsistent with the entire medical record. *Id*. at 21. The ALJ noted that Dr. Clark is Board Certified in Internal Medicine and is qualified to render a medical opinion on plaintiff's impairments, including Lyme disease. *Id*. She also repeated Dr. Clark's findings that there was no evidence of cardiac complications from Lyme disease or synovitis of the joint, and that lab results alone could not support a diagnosis of Lyme disease. *Id*. at 20. The ALJ then provided the following discussion regarding Dr. Stricker's diagnosis:

> While Dr. Clark found that antibiotics did not seem to change her symptoms, it was noted that she was post Lyme disease, which indicates resolution but it is not clear to what this resolution should be credited. Nonetheless, Dr. Clark was unable to make a diagnosis of Lyme disease for these reasons. This weakens Dr. Stricker's diagnosis based solely on lab results. Although treatment with antibiotics is consistent with Lyme disease, there are minimal records from Dr. Stricker and they indicate improvement by July 2013 [sic].[7]

*Id*.

The ALJ also relied on her finding that Lyme disease was not a medical determinable impairment to discount Dr. Bakos's treating opinion.[8] *Id*. at 23. Specifically, she found that

---

[7] Throughout her decision, the ALJ cites to a July 2014 treatment note to support her contention that plaintiff's Lyme disease resolved. *See* AR 19, 20, 23. The court therefore presumes the ALJ intended to state that plaintiff's Lyme disease improved by "2014," not "2013."

[8] Dr. Bakos assessed limitations significantly more limiting than those contained in the

7

1  "physical examinations were generally benign and do not support the extreme limitations found
2  by Dr. Bakos . . . . In fact, treatment notes indicated Lyme disease was resolved . . . by July
3  2014." *Id*. at 24.

### C. Discussion

Plaintiff argues that the ALJ erred in finding that Lyme disease was not a severe impairment. ECF No. 20-1 at 39. First, she argues that the ALJ improperly rejected Dr. Stricker's diagnosis, which was supported by objective medical evidence establishing Lyme disease as a medical determinable impairment. *Id*. at 40-41. She further contends that the ALJ erred in adopting Dr. Clark's opinion that Lyme disease could not be diagnosed. *Id*. at 41-42. Lastly, she argues that the ALJ erroneously determined that plaintiff's Lyme disease had resolved based on a misunderstanding of relevant terminology. *Id*. at 41.

To qualify for disability benefits, a claimant must establish an inability to engage in substantial gainful activity "by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1)(A). The existence of a medically determinable impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings . . . ." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p). This requires the record to contain "the results of medically acceptable clinical diagnostic techniques." *Id*.

Here, there is objective medical evidence, derived from medically acceptable diagnostic techniques, establishing plaintiff's diagnosis of Lyme disease. As noted above, plaintiff tested positive on the IgM Western blot test, a test used to help confirm Lyme disease. That test result constitutes objective medical evidence supporting Dr. Stricker's diagnosis of Lyme disease. *See Moores v. Colvin*, 173 F. Supp. 3d 989, 997 (E.D. Cal. 2016) (Brennan, E.) (citing *Morgan v. Colvin*, 2013 WL 6074119 (D. Or. Nov. 13, 2014) (concluding that positive blood test for Lyme disease provided an objective basis for physician's opinion that plaintiff was functionally limited due to aches and pains caused by Lyme disease). Moreover, the fact that the test result may not

---

ALJ's RFC determination. *Compare* AR 16 with AR 532-35.

definitively establish the diagnosis of Lyme disease (as suggested by Dr. Clark) does not negate Dr. Stricker's opinion. "[A] positive blood test is not required to diagnose Lyme disease; the existence of signs and symptoms are adequate." *Morgan*, 2013 WL 6074119 at *11. Plaintiff was under Dr. Stricker's care for nearly a year. He personally examined plaintiff, prescribed her long-term antibiotic treatment, and monitored her progress and symptoms. Dr. Stricker was able to personally observe plaintiff's symptoms, which included pain and fatigue, as well as the results of blood testing. Accordingly, the record shows that Dr. Stricker's diagnosis was supported by objective evidence through medically acceptable diagnostic techniques.

Plaintiff further argues that the ALJ erred in adopting the opinion of Dr. Clark over the opinion provided by Dr. Stricker. ECF No. 20-1 at 41-43. She contends that there are differences of opinion in the medical community as to the proper methods and considerations for diagnosing Lyme disease, and that the ALJ impermissibly selected Dr. Clark's view on diagnosing Lyme disease over the view of Dr. Stricker. *Id*. at 42-43.

In social security cases, more weight is given to the opinion of a treating physician, who has a greater opportunity to know and observe the patient as an individual. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). If the treating physician's opinion is contradicted by another doctor, the treating opinion may only be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Lester*, 81 F.3d at 830. However, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." *Id*. at 831.

Because Dr. Stricker was plaintiff's treating physician, his opinion as to plaintiff's impairments was entitled to greater weight than the opinion of Dr. Clark. The ALJ, however, failed to accord such weight to Dr. Stricker's opinion, instead adopting Dr. Clark's completing opinion to support her finding that plaintiff's Lyme disease was not a medically determinable impairment. In doing so, the ALJ erred as Dr. Clark's non-examining opinion does not constitute substantial evidence justifying the rejection of Dr. Stricker's opinion. *Id*.; *Cf Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) ("When an examining physician relies on the same clinical findings

9

as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"

In addition to ignoring Dr. Stricker's status as a treating physician, the ALJ also failed to consider that Dr. Stricker's training rendered him more qualified to assess plaintiff's impairment. The ALJ explicitly noted that Dr. Clark was a board certified internist and qualified to render an opinion, but failed to acknowledge that Dr. Stricker is a hematologist. Aside from his status as a treating physician, Dr. Stricker's specialty entitles his opinion to greater weight. *Smolen*, 80 F.3d at 1285 ("[T]he opinions of a specialist about medical issues related to his or her specialization are given more weight than the opinion of a non specialist.").[9]

Lastly, plaintiff argues that the ALJ's conclusion that her Lyme disease did not cause functional limitations is based on an erroneous finding that her Lyme disease had resolved by July 2014. ECF No. 20-1 at 43-44. Plaintiff claims that the ALJ's finding that her Lyme disease had resolved is due to misinterpretation of a treatment note's reference to "post Lyme disease." *Id*. Plaintiff contends that statement "post Lyme disease" does not establish that her symptoms have resolve. Rather, she contends that it is shorthand for "post Lyme disease syndrome," which is used to refer to patients that continue to experience symptoms after completing treatment for Lyme disease.

In her decision, the ALJ found that by July 2014, plaintiff was considered "post lyme disease." AR 19. The treatment note referenced by the ALJ provides that plaintiff's medical conditions include chronic pain, anxiety, "post Lyme disease," and 7 months pregnant. AR 561. The ALJ interpreted the statement to mean that plaintiff either no longer had Lyme disease or no longer had any symptoms. *See id*. at 20 (evidence of record "suggesting resolved Lyme disease" ("it was noted that she was post Lyme disease, which indicates resolution . . . ."), 21 ("treatment notes are limited and indicated the claimant's Lyme disease resolved).

---

[9] Not only is Dr. Stricker a hematologist, but he is a Lyme disease expert. *See also Morgan*, 2013 WL 6074119 at *10 ("[P]laintiff sought treatment with Dr. Stricker, a Lyme disease specialist."); *Fallstead v. Astrue*, 2013 WL 5426223, *1 (N.D. Cal. Sept. 27, 2013) ("Rafael B. Stricker, M.D., [is] a Lyme disease expert."). Although his expertise in Lyme disease is not apparent from the record, and therefore the ALJ may have been unaware of this fact, the record does establish that he practices hematology. AR 55.

10

Although the ALJ's interpretation of phrase "post Lyme disease" superficially appears reasonable, other evidence contradicts the ALJ's reading of the treatment note. According to the Center for Disease Control, physicians describe patients who have non-specific symptoms—including fatigue, pain, and joint and muscle aches—after treatment as having "post treatment Lyme disease syndrome" or "post Lyme disease syndrome."[10] With that knowledge in mind, the appropriate interpretation of the July 2014 treatment note is that plaintiff was diagnosed with post Lyme disease syndrome. This is especially true considering plaintiff's symptoms, which included fatigue, muscle weakness, and muscle and joint pain. *See* AR 541-42 (severe fatigue, no energy, joint pain); 545-47 (back, neck, and joint pain); 549-50 (fatigue, muscle weakness, and back, neck, and joint pain). Such symptoms are consistent with post Lyme disease syndrome.

More significantly, the ALJ's interpretation is not plausible in light of other medical records. The July 2014 treatment record noting "post lyme disease" is from Dr. Bakos. *Id*. at 561. The following month, Dr. Bakos completed a Medical Source Statement, which reflects a diagnosis of Lyme disease as well as significant limitations resulting from the disease. *Id*. at 532-35. It cannot reasonably be concluded that Dr. Bakos found that plaintiff's Lyme disease was resolved in July, but resulted in debilitating impairments the following month.

Accordingly, the ALJ's finding that plaintiff's Lyme disease was resolved, and thus not a severe impairment, is not supported by substantial evidence. Moreover, the ALJ's error is not harmless. In assessing the medical opinion evidence, the ALJ concluded that Dr. Bakos and Dr. Stricker's opinions deserved less weight than Dr. Clark's because their opinions are not consistent with the entire medical record. AR 21. But to support that finding, the ALJ consistently noted that plaintiff's Lyme disease had resolved and medical records reflected "normal to mild sings on physical examination." *Id*. at 20. As just discussed, substantial evidence does not support the ALJ finding and plaintiff's Lyme disease resolved and medical records reflect severe symptoms consistent with Lyme disease. *See, e.g., id*. at 541-42; 545-47; 549-50; 570; 575; 582.; *see also Morgan*, 2013 WL 6074119 at *6 n.6 ("Lyme disease can cause long-term symptoms such as loss

---

[10] Center for Disease Control and Prevention, Post-Treatment Lyme Disease Syndrome, https://www.cdc.gov/lyme/postlds/index.html

11

of muscle tone on one or both sides of the face, severe headaches and neck stiffness due to meningitis, shooting pains, heart palpitations and dizziness, pain that moves from joint to joint, numbness and tingling in the hands or feet with concentration or short term memory.")

In assessing plaintiff's ability to work, the ALJ was required to consider all impairments. *Smolen*, 80 F.3d at 1290. The ALJ failed to adequately consider the impact of plaintiff's Lyme disease on plaintiff's ability to work. Accordingly, remand is appropriate to allow the ALJ to consider impact plaintiff's Lyme disease has on her ability to work. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

IV. Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's request for oral argument on the cross-motions for summary judgment is denied;

2. Plaintiff's motion for summary judgment is granted;

3. The Commissioner's cross-motion for summary judgment is denied;

4. The matter is remanded for further administrative proceedings consistent with this order; and

5. The Clerk is directed to enter judgment in plaintiff's favor and close the case.

DATED: March 31, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE